## UNIVERSAL WINDING CO. v. ABBOTT MACH. CO.

District Court, D. New Hampshire.

March 7, 1942.

As Amended May 21, 1942.

Dike, Calver & Porter, of Boston, Mass. (George P. Dike, of Boston, Mass., of counsel), for plaintiff.

Roberts, Cushman & Woodberry, of Boston, Mass. (Robert Cushman, of Boston, Mass., of counsel), for defendant.

PETERS, District Judge.

The plaintiff in this action seeks a declaratory judgment declaring invalid certain claims in Letters Patent of the United States No. 2,160,810, issued June 6, 1939, to E. J. Abbott, assignor of the defendant; or, if valid, that the patent is not infringed by two certain machines made by the plaintiff.

The defendant filed a counterclaim charging infringement of the Abbott patent by the plaintiff.

The plaintiff's position is that the claims in question, Nos. 3, 4, 5, 6, 7, 8, 13, 14, 15, 16, 17, 18, 19 and 28, are void for lack of novelty, in view of the prior art, and that the things claimed in 14 and 28,—the principal claims involved,—simply represent the putting together of old elements with the exercise of mere mechanical skill, and not patentable for that reason.

After several hearings the matter has been somewhat simplified by plaintiff's admission of infringement if the claims mentioned are valid, and by the fact that little, if any, reliance is placed by the defendant on any claims, except Nos. 14 and 28, leaving the question of the validity of those claims as really decisive of the issue.

The controversy relates to automatic machinery for winding yarns about a core or pin to make filling bobbins, so-called, for use in shuttles of looms.

In weaving cloth, the threads running lengthwise of the cloth are called the warp threads and those running crosswise are called the weft or filling threads, the latter name being more commonly used in the textile industry. The package consisting of a wooden pin or bobbin, so-called, with the thread wound around it is called a "filling bobbin" or "filling wound bobbin" when the thread is to be used for the filling of the cloth, and when it is wound on the bobbin in the particular way it has to be wound to be useful for that purpose. The filling wound bobbin is held at its butt end in the cavity of the shuttle and the thread is paid out through an eye in the end of the shuttle near the tip of the bobbin. The great speed at which the thread must be delivered and the limited space within the shuttle require a special form of winding of the thread, so that it may come off without tangling or breaking. This is accomplished by laying the thread on the bobbin in a series of layers like nested cones, each cone-shaped layer being wound upon the next preceding one and being axially displaced slightly toward the tip of the bobbin as winding proceeds. The finished thread mass has a cylindrical shape throughout the greater part of its length, terminating toward the tip of the bobbin in a tapered or cone-shaped surface. The

cylindrical part of the surface, however, is formed not by cylindrical layers of thread, one over the other, but by the bases only of the several nested cones of wound thread. By this method of winding the thread on the bobbin the growth of the thread mass as the winding proceeds is in a lengthwise or axial direction from the butt to the tip end of the bobbin. This method of winding and form of package is necessary so that the thread may be unwound by being drawn lengthwise from the tip of the bobbin; that is, always from the last cone-shaped layer of thread nearest the tip, so that the thread in coming off does not have to drag across the length of the package, as it would do if the layers of thread were laid cylindrically throughout the whole length of the bobbin.

The essential parts of a winding-machine consist of spindle centers for grasping and rotating the bobbin on which the thread is wound; a thread-guide which lays each turn of the thread in the right position on the revolving bobbin, and some means such as a cam to move the thread-guide to and fro lengthwise of the bobbin. The shape of the finished package depends upon the movement of the thread-guide back and forth on the bobbin.

Automatic machinery for winding yarns has been in common use for more than eighty years. A notable example is found in the spool-winding art in which the automatic mechanism has been highly developed. In winding spools with thread, when one is filled the machine cuts a nick in the flange of the spool and catches the strand of thread therein. It then opens the spindle centers to let the spool of thread drop out and carries an empty spool into position. At the same time a strand from the thread-guide is placed across the end face of the spindle center to hold the thread in position for the new winding. When the spindle centers close on the new spool the thread-guide moves into position for laying the thread on the spool, the winding starts immediately, and the process continues automatically and with astonishing rapidity.

The evolution of automatic spool-winding machinery has reached such a point that in a machine in use in a mill at Groton, Connecticut, since 1929, shown in evidence by moving pictures, the stroke of the thread-guide lengthens slightly at the end of each stroke to compensate for the slope of the heads of the spool, and the thread-guide, when desired, returns to begin winding at a predetermined point on the barrel of the spool, so that a specified number of yards of thread may be wound, with the last layer always terminating at the nick in the flange of the spool.

Other packages of yarns have also been wound with automatic machinery for many years, but, for some reason, not perfectly clear, automatic features were not applied to the winding of filling bobbins until the time of the Abbott invention. Before then the machines, which had been in common use for many years in winding filling bobbins, required the services of an operator to tend them. When the winding of the bobbin was finished the operator had to manually cut the thread or yarn, remove the wound package, replace it with an empty bobbin, fasten the thread on it, return the thread-guide to the starting position and start the winding again.

In the Abbott machine of the patent, as well as in the plaintiff's Universal machines, the things the operator formerly had to do are done automatically.

The Abbott machine comprises an endless track and a number of winding units which travel about the track winding as they go. Adjacent to one end of the track is a stationary mechanism which causes the completed bobbin to drop into a receptacle, cuts the thread, returns the thread-guide to the starting point, inserts an empty bobbin, fastens the thread and starts winding again.

The plaintiff has two machines, alleged to infringe, called Universal machine, Type A, and Universal machine, Type B. The difference is unimportant. Each has a series of stationary winding units which do not travel around any track. Instead, each unit has a servicing mechanism of its own which does the same things, when the winding is completed, which are done in the Abbott machine when the completed bobbin reaches the stationary mechanism referred to. All three machines are completely automatic. They all obtain the same result in substantially the same way, although they differ in appearance, the Abbott machine having one servicing mechanism for the entire series of traveling units, and the plaintiff's machine having a servicing mechanism for each stationary unit. The magazines for the bare bobbins are also differently arranged.

A machine of the plaintiff, called Universal No. 90, manually tended, was the standard machine for winding filling wound bobbins for many years before the Abbott device, and therefore many years before the Universal people applied automatic mechanism to their machines. The Abbott invention came first, but not much so, as several automatic filling-winders appeared at about the same time without knowledge of each other.

The plaintiff sees an ulterior design on the part of the defendant, by wording his claims to cover every conceivable kind of machine for winding filling bobbins automatically, to obtain a monopoly of the manufacture, use and sale of such machines, and a consequent unwarranted burden on the textile industry.

I do not find it necessary to explore the matter of the extreme scope of the claims. They cover automatic filling winding machines of which the machine of the patent is an illustration, and they cover the plaintiff's automatic machines. If the patent is valid the plaintiff infringes and the monopoly follows as a matter of law. The validity of certain claims in the patent seems to be the only matter with which we are concerned.

Claims 14 and 28 are as follows:

"14. A winding machine having therein means for winding a strand from a supply onto a rotating core, means for traversing the strand on the core, means for causing a progressive shifting of the range of traverse in a direction along the axis of the core during winding, in combination with means for automatically stopping such traversing upon completion of the package, means for returning the traverse means to the beginning end of a core, means for automatically associating the strand with a fresh core for winding thereon, and means for automatically resuming traversing of the strand.

"28. A winding machine having therein core end-clamping mechanism acting automatically to clamp a core for winding, means for automatically supplying a core to said core end-clamping mechanism, and means operable after clamping of the core for rotating the clamped core to wind strand thereon, in combination with a traversing strand guide adapted to distribute the winding strand on the rotating core, the strand guide having a full stroke less than the length of the package, means for shifting the zone of traverse stroke of the guide axially of the core during winding, and means for automatically causing the zone of the strand guide stroke to lie at one end of the core at the start of winding thereon."

The plaintiff contends that each of the elements in Claims 14 and 28 is old; that each performs its own function in the old way; that none of them modifies the operation of the other, and that the result produced is the mere adding together of the contributions of the separate elements.

The defendant considers and objects to this as "piecemeal" anticipation, to which the plaintiff replies that the Abbott improvement is a "piecemeal" invention, a patchwork of old elements and ideas grouped into a single machine without modification or ingenuity, and performing in the new machine no different functions and accomplishing results no different from those they were intended originally to accomplish.

The claims in question appear to represent the application of previously known automatic winding features to previously known hand-operated filling winding machinery. The point is whether this application was invention or the mere exercise of the skill of the calling, indicated by the prior art.

The Groton spool winding machines, above referred to and much relied upon by the plaintiff, represent the development of a series of British patents which taught the fundamental features of automatic winding. They extend back to the patent No. 122 issued in 1858 to William Weild of Manchester, England, and include No. 48 issued to Weild in 1870, Baines & Schmidt, No. 15084 of 1902, and Baines & Schmidt No. 12189 of 1911, as well as No. 15935 of 1911. The first of the machines were imported from England and installed at Groton in 1921; the others a few years later. These machines are not filling winders, nor were they intended to be modified to do filling winding, but they taught important features of automatic winding which have been applied to filling winders, such as the donning and doffing mechanism, the method of fastening the thread by pinching it against the end of the spool, the advance of the traverse axially on the spool or bobbin, the dropping out of the bobbin and the re-

turn of the thread-guide to the starting point.

Other patents granted in America have shown a development of the basic ideas of the British patents and supplied mechanism for performing the different functions.

The Cunliffe Patent, 1,233,988, is an automatic combined spinning and winding machine. It winds a coreless package, or "cop" so called. It performs automatically all the necessary operations to produce cops continually. It produces a filling wound cop which is old and well known for use in the shuttles of looms.

The Calkins Patent, 1,236,906, produces a filling wound bobbin, like the product of the Abbott machine. It is not completely automatic as it is not provided with the donning and doffing mechanism, but it has the automatic means for returning the thread to the starting point of a new winding. It seems to perform all the functions of the two claims of the Abbott patent in question except the donning and doffing and the fastening of the yarn to the new bobbin.

The Hill Patent shows the automatic donning and doffing feature and so does Hooper, No. 1,121,103, and Brackett, No. 686,580.

In the several machines of these patents, as well as in some others that were cited, there are to be found all the features necessary for an automatic filling winding machine. In fact, the Cunliffe shows a machine that automatically effects a filling wind although it does not wind on a removable core. The other machines have mechanism for dropping the wound bobbin out of the grips, severing the thread, placing an empty core in position for starting again and for attaching the thread for that purpose; and in several the mechanism for moving the thread-guide back to the starting position.

The substitution of automatic mechanism for hand operation in filling winders was doubtless an improvement and resulted in much increased production and consequent profit. The evidence shows that where the old Universal No. 90 hand-operated machine could produce about 250 filled bobbins per hour, the automatic machines can produce from 1000 to 2000 per hour. Improvement, however, is not necessarily invention. It may result either from the ordinary ability of a mechanic skilled in the art, or it may be due to the exercise of inventive faculty. It is only in the latter case that the law grants a monopoly to the inventor.

It was said by Judge Hale, speaking for the Circuit Court of Appeals of this Circuit, in Gerosa v. Apco Mfg. Co., 299 F. 19, 25, "Without doubt it is the duty of a court to recognize the inventor when it meets him; but it is also its duty not to extend such recognition to mere mechanical skill. It is as important to afford protection to manufacturers and mechanics in their right to employ old devices for new situations as it is to safeguard inventors in their discoveries."

An important case in this connection is Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 27 L.Ed. 438.

A number of cases have been cited to the Court by counsel for the plaintiff in this case with the suggestion that decisions of the Supreme Court show that the standard of invention now is higher than previously, and that appears to be so. Textile Machine Works v. Louis Hirsch Textile Machines, 302 U.S. 490, 58 S.Ct. 291, 82 L.Ed. 382, is a case strongly relied upon by the plaintiff here as quite decisive of this controversy. Many cases along similar lines are cited also in a recent decision of the Supreme Court in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 40, 86 L. Ed. ——, in which the Court says: "We may concede that the functions performed by Mead's combination were new and useful. But that does not necessarily make the device patentable. Under the statute * * * the device must not only be 'new and useful' it must also be an 'invention' or 'discovery'. Thompson v. Boisselier, 114 U.S. 1, 11, 5 S.Ct. 1042, 1047, 29 L.Ed. 76. Since Hotchkiss v. Greenwood, 11 How. 248, 267, 13 L.Ed. 683, decided in 1851, it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art."

Sometimes a combination of several old features and the application of them to an old apparatus may be patentable if any novel result is achieved or any old result in a novel way, but not when each element functions as before and the result

is simply an aggregation of old and expected results. Here I can see no joint function performed which produces a new result or any old result in any other way than it was formerly accomplished.

For a person without technical knowledge of the subject matter to say whether a change in machinery, which is obviously an improvement, involves inventive genius or only mechanical skill seems to be rather a dogmatic assertion, and I am conscious of that fact in holding, as I do, that there is here an absence of inventive genius; but I am somewhat buttressed in that finding by the similarity of this case with the situation in the Hirsch case above referred to, where Judge Hand in the Circuit Court [2 Cir., 87 F.2d 702, 705], supported by the Supreme Court in finding no invention, said they could not hold "that an art which knew how to reinforce 'full-fashioned' webs without re-entrant angles, and straight edged webs with such angles, required some uncommon talent merely to conceive of combining the two". In the case before me it is difficult to see how an art which knew how to wind packages of yarns automatically and knew how to wind filling packages by hand, required some uncommon talent merely to conceive of combining the two.

On the question of invention also it should not be overlooked that when it apparently became desirable to convert manual operation into mechanical operation several independent inventions of the same thing appeared substantially simultaneously. That is, the Abbott machine, the Universal and Schweiter & Whitin's, as shown by the evidence.

The general rule is that it is not broadly patentable to do by automatic machinery what has commonly been done by hand. Jones v. General Fire-proofing Company, 6 Cir., 254 F. 97, 99, Judge Denison.

I am forced to the conclusion that claims 14 and 28 are invalid.

The presumption of validity of the patent is a good deal shaken by the fact, as shown by the fire-wrapper, that many of the most important patents hereinabove referred to were not mentioned by the Patent Office and apparently not considered.

It is not necessary, in view of my conclusion, to go into the matter of the validity of the other claims that are attacked. They are of minor importance and if 14 and 28 go out, they go out.

Findings may be filed in accordance with this opinion and after they are settled a declaratory judgment will be entered for the plaintiff.