## AMERICAN ROLLING MILL CO. v. FINKE ENGINEERING CO. et al.

### Civ. No. 13.

District Court, S. D. Ohio, W. D.

April 25, 1942.

Allen & Allen, of Cincinnati, Ohio (Parkinson & Lane and Wallace R. Lane, all of Chicago, Ill., Marston Allen and Gibson Yungblut, both of Cincinnati, Ohio, and E. A. Correa, of Middletown, Ohio, of counsel), for plaintiff.

Drury W. Cooper and Ernest D. Given, of Cooper, Kerr & Dunham, all of New York City, and Greer Marechal, of Dayton, Ohio, for defendants.

NEVIN, District Judge.

This is a patent suit involving two patents. The parties are the American Rolling Mill Company, plaintiff, and the Finke Engineering Company and Republic Steel Corporation, defendants. The Finke Engineering Company is a customer of Republic Steel Corporation. It was included as a defendant for jurisdictional purposes. Subsequently defendant, Republic Steel Corporation, agreed to and did appear and defend the action. It is now agreed by counsel for the respective parties that the Finke Engineering Company may be dismissed from the case, and an order to that effect may be prepared by counsel and submitted to the court.

The patents sued upon are U. S. Patent No. 1,735,732 for a process of protecting metal culverts, issued to plaintiff November

12, 1929, on an application filed by Allerton S. Cushman November 30, 1925, and U. S. Patent No. 1,652,703 for a corrugated metal culvert, issued December 13, 1927 to plaintiff on an application filed by Allerton S. Cushman June 17, 1926.

Patent No. 1,735,732 [1] contains two claims. Plaintiff relies on both. Patent No. 1,652,703 [2] contains fifteen claims. Of these, plaintiff relies on Claims 1 to 5, inclusive, and 10.

The defenses are invalidity and non-infringement as to both patents.

Plaintiff and defendant are both manufacturers of corrugated metal culverts. A corrugated culvert differs from other metal pipe used for culvert purposes, in that it is made of sheet metal and is corrugated circumferentially. It is made of sheets which are corrugated lengthwise, then formed into cylinders by means of rolls and then riveted, so that the corrugations run around the cylinder rather than lengthwise thereof. Normally a number of the corrugated cylinders are connected by expanding one end of each and forcing a series of the single sheet cylinders into endwise overlapping engagement with each other, the overlap being riveted. A 20 foot section is customary length for shipment, made up of ten cylinders 2 feet long.

In instances where the corrugated sheet metal culvert is required to conduct a rapid flow of water, together with sand, gravel and rock, it tends to give way at the bottom. Customarily these culverts are made of galvanized sheet metal, that is, the sheets are coated with zinc.

A culvert which plaintiff asserts shows the typical condition of failure that was encountered by it is in evidence, and is Ex. No. 12. Plaintiff states that an examination of that exhibit will show that the pitting and holes rusted through are mainly on the up stream walls of the corrugations. To remedy this condition plaintiff asserts that it tried various expedients; that it was its "idea that corrosion was the difficulty, so investigators tried increasing the thickness of the zinc coating. They tried various paints. Analysis of soils was gone into in order to discover causes for corrosion. But to no avail. The trouble was that its attention was focused upon corrosion. The failures were due to erosion. Armco had been treating a symptom rather than the disease. The very corrugated nature of the pipe which was of such great advantage otherwise, was a defect under erosive conditions."

Plaintiff asserts further that it was the patentee, Cushman, "who concluded that

---

[1] The two claims of Patent No. 1,735,-732 (Process) read as follows:

"1. A process of protecting circumferentially corrugated culverts of sheet metal which consists in flowing into the culvert when laid horizontally, a heat liquefied body consisting of an asphaltic substance in sufficient quantities and of a consistency to flow and collect in a pool or pools along the bottom center line of the culvert, of sufficient depth to level off the corrugations along said bottom center line, and then permitting the asphaltic substance to solidify, while holding the corrugated culvert horizontally.

"2. A process of protecting circumferentially corrugated culverts of sheet metal which consists in flowing into the culvert when laid horizontally, a heat liquefied body consisting of an asphaltic substance, in sufficient quantities and of a consistency to flow and collect in a pool or pools along the bottom center line of the culvert of sufficient depth to level off the corrugations along said bottom center line, and then permitting the asphaltic substance to solidify, while holding the corrugated culvert horizontally, the area of original contact of the asphaltic substance being sufficient to

leave the lower portion of the sides of the culvert adjacent to the pool or pools covered with an adherent film of said asphaltic substance from which the excess has flowed to the center."

[2] Counsel have selected Claim 3 of Patent No. 1,652,703 (Product) for purposes of discussion in the record and briefs (Rec. pp. 10, 11—Plaintiff's Brief p. 15—Defendant's Brief p. 14). Claim 3 reads as follows: "3. A sheet metal culvert having a lowermost portion formed as a part of a cylindrical surface corrugated circumferentially, and adapted to expand and contract, and an inert, adhesive, plastic substance free from brittleness such as soft asphalt, substantially filling the depressions of the corrugations of said portion internally thereof over an area confined substantially to said base, and covering the spaces between corrugations so as to present a substantially depression free surface along said base, said substance also coating the sides of the inside of said portion adjacent said filling with a relatively thin adhesive covering, said substance also being applied as an adhesive coating on the outside walls of the said culvert."

the corroding away of the bottom of corrugated culvert pipe was due primarily to the effect upon currents of water, carrying abrasive material, of the wavy outline of the pipe interior. Because of the eddy currents set up by the corrugations, the abrasive material was scraping and nicking away at the zinc coating. Where the zinc was gone, and the metal exposed, rust appeared; then the rust film was scoured away leaving new surfaces exposed for further rust," and that "to free the corrugated culvert from erosion difficulties, due in part to the necessarily uneven surface over which the conducted water must flow therein, and to do this without sacrifice of the highly advantageous nature of the structure was the problem, once the cause was recognized."

Plaintiff says that it was upon this problem that the patentee (Cushman) focused his attention. His solution of the problem, plaintiff asserts, is set out in the patents here in suit.

In Patent No. 1,735,732 (Process) the patentee states, inter alia,

"My invention relates to the protection of sheet metal culverts of the corrugated cylindrical type.

"In a study of the causes of defects in corrugated sheet metal culverts, particularly where the same are protected by a galvanized coating, it has been discovered that the defects arise not through deformation of the pipe, which of itself enables the pipe to sustain the unequal load of a fill of earth and rock, but through a failure of the pipe along the bottom central line thereof, from erosion and corrosion. At this line, particularly along the crests of the corrugations toward the side from which flow comes into the culvert, the result of abrasion and chemical action of waters, wears away and corrodes the metal. In galvanized culverts the galvanizing is first worn off along the crests of the corrugations resulting in an abrasion from which progressive deterioration starts.

"Efforts have been made to eliminate the corrugated lower portion of a culvert pipe of the type noted, by casting or molding a lining into the pipe of concrete, or other cementitious material, and also by placing smooth surfaced inserts of metal into the corrugated pipes, thereby avoiding the interruptions of the corrugations to the stream in the pipe.

"I have developed a type of culvert in which an asphaltic paint of elastic, and closely adherent nature is employed for the purpose of protecting the inside of such a pipe, and have discovered a process of applying protective layers of adhesive, resilient substances to the insides of pipes which permits of the rapid, and inexpensive protection of the same, at the points of wear and nowhere else. * * * The essential of my process is the fact that the pipe is corrugated circumferentially and is held horizontally while the bitumen solidifies. It cannot run out of the corrugations in such conditions. The spraying or flowing or dipping may be used as convenient."

The patentee, in Patent No. 1,652,703 (Product), says:

"My invention relates to corrugated metal culverts which are very widely used for all kinds of drainage and sewage purposes * * *.

"These culverts are formed of sheets corrugated and bent into tubular form, the longitudinal edges being secured together by riveting, or otherwise, as desired. The longer culverts are made up of shorter sections by inserting the sections end to end into telescoping relation, and, if desired, further securing them together by rivets, bolts or the like. * * * The corrugated culvert is recognized as taking an important place in industry due to certain factors thereof which should be noted. The strength factor imparted by the corrugations permits of the culvert being made of relatively thin metal, and still able to withstand the great strains incident to the support of fills of earth, heavy traffic, and allow for expansion and contraction under different climatic conditions and other causes. This makes for inexpensiveness and relatively small weight. * * * Investigations of thousands of culverts in actual service from one to twenty years have shown that the life of the metal culvert of the corrugated type is terminated by the failure of the bottom section of the culvert to resist the effects of abrasion and corrosion. * * * The problem presented has been recognized in the art, and many efforts have been made to provide against the unevenness of the bottom of the culvert where the abrasive action comes."

Plaintiff further says, "Dr. Cushman taught the use of a tacky type of asphalt as a corrugation filler. In his patent 1,652,-703, he gives a full description of his pre-

ferred asphalt. (Patent p. 2, col. 1, line 54 et seq.) * * *. The material itself was old. The functions thereof whereby it constituted an ideal corrugation filler, had not been appreciated. * * * This was new. Prior workers thought of hard substances to resist hard wear."

Defendant, in its answer, sets forth several objections to the validity of the claims. One of these is lack of invention or "patentable novelty" in both patents. In view of the conclusion to which the court has come, this is the only objection necessary to consider. On this question defendant submits that "the sole asserted merit that distinguishes the supposed advance is, that the coating is to be thick only at what becomes the bottom of the culvert when laid. Elsewhere over the surface the coating is thin. The substance prescribed for the coating is bitumen or asphalt,—a substance as well known for coating culverts as is woolen cloth for patching garments. * * * The reason for thickening the asphalt at the bottom of the culvert on the inside is that it had been found that the greatest wear was there. It is as though a mother, knowing from experience that her boy's trousers will wear at the knees and seat, put reinforcement at these points. * * * The most that can be said for Cushman's alleged improvements is that they are what would be expected from any workman skilled in the art, and that his alleged improvements are not of such a nature as to entitle him to valid patents. His patents clearly show that Cushman claimed only to have discovered that culverts in actual use were being eroded along their bottoms and proposed to put in an old and well known material to protect the metal at that point. It is true that he further disclosed how at least partial protection could be obtained with a minimum of the old material; but that also is a matter of skilled workmanship if the workman appreciates that the asphalt is expensive and wants to save as much as he can in its use."

The court agrees with the conclusion of defendant that Cushman's alleged improvements are only such as would be expected from any workman skilled in the art and "that there is nothing about the Cushman inventions which indicates any flash of creative genius. Everything he accomplished was what the skilled workman in the calling would do when he was faced with the condition in a culvert and had to correct it."

It is the view of the court that the language of the Supreme Court in Altoona Publix Theatres v. American Tri-Ergon Corp., 294 U.S. 477, at page 486, 55 S.Ct. 455, 458, 79 L.Ed. 1005, is here applicable: "An improvement to an apparatus or method, to be patentable, must be the result of invention, and not the mere exercise of the skill of the calling or an advance plainly indicated by the prior art. Electric Cable Joint Co. v. Brooklyn Edison Co., 292 U.S. 69, 79, 80, 54 S.Ct. 586, 78 L. Ed. 1131", and that the patents in the instant case fall squarely within the decision of the Supreme Court in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, on page 90 et seq., 62 S.Ct. 37, 40, 86 L.Ed. ——, where the court say:

"We may concede that the functions performed by Mead's combination were new and useful. But that does not necessarily make the device patentable. Under the statute, 35 U.S.C. § 31, 35 U.S.C.A. § 31, R.S. § 4886, the device must not only be 'new and useful,' it must also be an 'invention' or 'discovery'. Thompson v. Boisselier, 114 U.S. 1, 11, 5 S.Ct. 1042, 1047, 29 L.Ed. 76. Since Hotchkiss v. Greenwood, 11 How. 248, 267, 13 L.Ed. 683, decided in 1851, it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art. Hicks v. Kelsey, 18 Wall. 670, 21 L.Ed. 852; Slawson v. Grand Street R. Co., 107 U.S. 649, 2 S.Ct. 663, 27 L.Ed. 576; Phillips v. Detroit, 111 U.S. 604, 4 S.Ct. 580, 28 L.Ed. 532; Morris v. McMillin, 112 U.S. 244, 5 S.Ct. 218, 28 L.Ed. 702; Saranac Automatic Machine Corp. v. Wirebounds Patents Co., 282 U.S. 704, 51 S.Ct. 232, 75 L.Ed. 634; Honolulu Oil Corp. v. Halliburton, 306 U.S. 550, 59 S Ct. 662, 83 L.Ed. 980. 'Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish expense, is not patentable.' Reckendorfer v. Faber, 92 U.S. 347, 356, 357, 23 L.Ed. 719. The principle of the Hotchkiss case applies to the adaptation or combination of old or well known devices for new uses. Phillips v. Detroit, supra; Concrete Appliances Co. v. Gomery, supra [269 U.S. 177, 46 S. Ct. 42, 70 L.Ed. 222]; Powers-Kennedy Contracting Corp. v. Concrete Mixing & Conveying Co., supra, [282 U.S. 175, 51 S. Ct. 95, 75 L.Ed. 278]; Electric Cable Joint Co. v. Brooklyn Edison Co., 292 U.S. 69,

54 S.Ct. 586, 78 L.Ed. 1131; Altoona Publix Theatres v. American Tri-Ergon Corp., supra; Textile Machine Works v. Louis Hirsch Textile Machines, Inc., 302 U.S. 490, 58 S.Ct. 291, 82 L.Ed. 382; Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334. That is to say the new device, however useful it may be, must reveal the flash of creative genius not merely the skill of the calling. If it fails, it has not established its right to a private grant on the public domain.

"Tested by that principle Mead's device was not patentable. We cannot conclude that his skill in making this contribution reached the level of inventive genius which the Constitution, Art. I, § 8, authorizes Congress to reward."

██ Plaintiff asserts that commercial success has followed the Cushman patents; that before Cushman railway engineers had condemned the corrugated sheet metal culverts and that engineers in New England had gone so far as to disapprove corrugated sheet metal culverts entirely, but that these objections were overcome by the process suggested in the Cushman patent. The evidence as to these matters might be persuasive if the court entertained any doubt on the question of invalidity which, in the instant case, it does not. Textile Machine Works v. Louis Hirsch Textile Machines, Inc., 302 U.S. 490, 58 S.Ct. 291, 82 L.Ed. 382; Toledo Pressed Steel Co. v. Standard Parts, Inc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334; Rid-Jid Products v. Rich Pump & Ladder Co., 6 Cir., 103 F.2d 574.

Upon a consideration of the whole of the record, the briefs and arguments of counsel and the applicable law, the court has arrived at the following:

### Findings of Fact.

1. This suit was brought under the Patent Laws of the United States by American Rolling Mill Company, an Ohio corporation, having its principal place of business at Middletown, Ohio, against the Finke Engineering Company, an Ohio corporation, having its place of business in Dayton, Ohio, and Republic Steel Corporation, a New Jersey corporation, having an office and principal place of business in Cleveland, Ohio. The Finke Engineering Company was included as a defendant because it purchased certain culverts from Republic Steel Corporation and installed them near Dayton, Ohio. The suit is being defended by Republic Steel Corporation and it has agreed to plaintiff's suggestion that the Finke Engineering Company be dismissed from the case.

2. The patents sued upon are U. S. Patent No. 1,735,732, for a process of protecting metal culverts issued to plaintiff November 12, 1929 on an application filed by Allerton S. Cushman November 30, 1925, and U. S. Patent No. 1,652,703 for a corrugated metal culvert issued December 13, 1927 to the plaintiff on an application filed by Allerton S. Cushman, June 17, 1926. Plaintiff's legal title to both patents is not disputed.

3. Plaintiff relies on both of the two claims of patent in suit No. 1,735,732 and on claims 1 to 5, inclusive, and claim 10 of patent in suit No. 1,652,703.

4. The defenses are invalidity and noninfringement as to both patents.

5. The corrugated metal culvert (uncoated) was old before Cushman, having been patented to James H. Watson May 5, 1896, Patent No. 559,642 (Exhibit 515).

6. Plaintiff admits that asphalt with the characteristics described in the patents in suit was well known on the market at the time the patents in suit were written, this being Sarco asphalt (Plaintiff's Reply Br. p. 43) used by Wigle Pipe Works, Denver, Colorado, prior to 1921 and in 1921 and subsequently by its successor, Thompson Manufacturing Company (Depositions Exhibit 513—see Garrett deposition, p. 32 et seq.).

7. Patent in suit No. 1,735,732 is only for the employment of a well-known characteristic of fluids, i. e. to seek their lowest level, in filling up the hollows of the corrugations along the bottom of a corrugated metal culvert held in horizontal position.

8. The process of patent in suit No. 1,735,732 was used in all of its essentials in 1920 by road maintenance men employed by Ventura County, California (Depositions, Exhibit 514).

9. Patent in suit No. 1,652,703 does not disclose any patentable invention as it is simply for a corrugated metal culvert which is lined with asphalt only at the points where Cushman observed wear.

10. Patent in suit No. 1,652,703 does not disclose patentable invention in view of the Texas Oil Company use in 1921 (Depositions, Exhibit 514).

11. Patent in suit No. 1,652,703 does not disclose patentable invention in view of the

corrugated metal culvert which was paved along its bottom with asphalt and pea gravel in 1920 by employees of Ventura County, California, and in view of the same culvert which was repaved with concrete in 1925 (Depositions, Exhibit 514).

12. Patent in suit No. 1,652,703 does not disclose patentable invention in view of Watson patent No. 559,642 (Exhibit 515), the Thompson Manufacturing Company use (Depositions, Exhibit 513), Thorsby patent No. 1,180,621 (Exhibit 528E), Culver patent No. 271,687 (Exhibit 528B), Pierson patent No. 124,624 (Exhibit 528A) and Smith patent No. 1,049,544 (Exhibit 528D).

### Conclusions of Law.

1. Claims 1 and 2 of Cushman patent in suit No. 1,735,732 (Process) are not for patentable inventions in view of the disclosure of the patent and in view of the prior art, and accordingly they are invalid.

2. Claims 1 to 5, inclusive, and 10 of Cushman patent in suit No. 1,652,703 are not for patentable inventions in view of the disclosure of the patent, and in view of the prior art, and accordingly they are invalid.

3. Patents in suit Nos. 1,735,732 and 1,652,703 are both invalid because they lack patentable invention as defined by the United States Supreme Court in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. —.

4. Plaintiff's complaint should be dismissed at plaintiff's costs, as prayed for by defendant in its answer.

Counsel may prepare and submit a decree accordingly.