### WHITE et al. v. E. L. BRUCE CO.
### No. 9264.

Circuit Court of Appeals, Third Circuit.

Argued May 9, 1947.

Decided May 29, 1947.

Newton A. Burgess, of New York City (William H. Foulk, of Wilmington, Del., John F. Ryan, of New York City, and John W. Maher, of Washington, D. C., on the brief), for appellant.

John J. Darby, of Washington, D. C. (Arthur G. Connolly, of Wilmington, Del., and C. Willard Hayes (of Cushman, Darby & Cushman), of Washington, D. C., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN, and O'CONNELL, Circuit Judges.

GOODRICH, Circuit Judge.

In the District Court the plaintiffs (hereinafter referred to as White) brought a declaratory judgment suit against defendant (hereinafter referred to as Bruce or patent owner). The object of the suit was to get a declaration of invalidity and non-infringement of three patents owned by Bruce. The three patents are: Partee-Gray Patent 2,288,585, Partee-Gray Patent 2,341,161 (referred to hereafter as '161), and Partee Patent 2,276,253. White won in the District Court on his contention that the patents were invalid. He lost on the question of infringement, but, of course, that becomes unimportant if the conclusion of the District Court is sustained on the matter of validity.

The District Judge made full findings of fact and gave a helpful explanatory discussion of the points of the case which he considered critical. Bruce's appeal in this

Court is limited to the correctness of the decision of the Court below upon '161. Patents '253 and '585 are apparatus patents, '585 representing a claimed improvement over '253. All are owned by Bruce.

Patent '161 is a method patent for operating the apparatus described in '585. The description used by the applicant is the same in both instances up to the point where he separates his apparatus and method claims.[1] We have before us on this appeal only the question of the correctness of the judgment of the District Court declaring invalid for want of invention Bruce's patent ('161).

This Circuit has pointed out in several instances recently that the question of invention is uniformly said to be one of fact. It is sufficient to cite our recent holdings on the subject without repeating the discussion of the point therein. Hazeltine Corporation v. General Motors Corporation, 3 Cir., 1942, 131 F.2d 34; Cusano v. Kotler, 3 Cir., 1947, 159 F.2d 159 and authorities cited. To these should be added the most recent pronouncement in the First Circuit where the Court says: "Whether the question of invention is one of fact or of law is not too clear on the authorities; this uncertainty is indeed not entirely dispelled by consideration of decisions of the Supreme Court. * * * Until advised to the contrary by the Supreme Court, we shall * * * regard it [as a question of fact]."[2] As a decision on a question of fact the Trial Judge's conclusion, as we have pointed out in the cases cited, is entitled to the consideration provided for in Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Our conclusion in this case is that this is certainly not an instance in which we can say that the result reached by the learned District Judge was clearly erroneous as we shall now endeavor to explain.

The subject-matter of the patent is a method for factory finishing hardwood flooring. By the patent owner's method the flooring is run on a conveyor belt where the finish is applied, heated, dried, rubbed, waxed, and polished. By this process it comes out in finished form, fit to be bundled, shipped or used at the end of 12 minutes.[3] The result is claimed to be a better finish on the material than given by other methods. The saving in expense through concentration of the finishing process to 12 minutes is obvious. One may grant ingenuity to those who contrived the method.

A rather considerable commercial success appears on the part of patent owner in marketing flooring finished according to the method described in the patent. White counters this by pointing to Bruce's strong position in the hardwood flooring trade and the vigorous advertising efforts made on behalf of the factory finished flooring. We need not enter into an analysis of the reason for the commercial success. It is true that it has many times

---

[1] Compare Partee-Gray No. 2,288,585 with Partee-Gray No. 2,341,161.

[2] Lincoln Stores v. Nashua Mfg. Co., 1 Cir., 1946, 157 F.2d 154, at page 163.

[3] The language just used is an endeavor to paraphrase what the language of the patent application has stated in Claim 1 which reads as follows: "1. The method of finishing wood flooring in an uninterrupted series of successive operations while the flooring moves continuously along a production line the steps comprising, applying uniformly to the wood a composition containing the necessary finishing elements, said composition being a penetrating seal type of finish which contains a drying oil base, a resin and a volatile solvent, heating the wood and the applied composition by heat which penetrates [sic] both the composition and the underlying wood in order to remove moisture, volatilize the solvent and set the composition in the wood, brushing and rubbing the finish-coated surface, while heated to effect removal of surplus composition from the surface and substantially uniform distribution of the composition in the surface pores of the wood, to thereby produce a smooth, sealed, finished surface, and finally applying wax to the said surface of the wood while the latter is still heated and brushing the waxed surface to polish it, the aforesaid operation being carried out in the order stated."

Claim 2 adds the following: "2. The method of claim 1 in which the heating is accomplished by radiation which is predominantly infra-red in wave length."

been said to be relevant on the matter of invention and to become important where the point is doubtful.[4] We do not think this is a case where we need weigh the effect of this element for we think that the District Judge was right in finding that the prior art contained all the elements of discovery necessary to practice this process.

The patent owner does not claim anything novel about the type of finish used in treating the surface of the flooring. Combinations of an oil drying base, resin and solvent are well known and the addition of a "filler" to that combination is also nothing new.[5] The patentee, himself, says that he uses a finish patented by an earlier inventor.[6] Factory finishing of flooring is not new[7] and, indeed, was the object of Patent '253 which Bruce has abandoned after an adverse decision on its validity in this very lawsuit. It taught the conveyor belt method of applying finish to flooring and sending it out, at the end of the process, in a condition ready to use. The difficulty about that method was the fact that it took several hours and necessitated the handling of the material more than once in the process of putting it on racks to dry at one stage of its journey through the finishing plant.

The aiding of this finishing process by raising the temperature of the wood to be finished is also not new. Heat was earlier used to volatilize the solvent in the material applied to the wood. At a later date, but before the application for this patent, temperatures ranging from 350° to 400°[8] were applied to shingles because it was found that the impregnation was more perfect and there resulted a deeper penetration and more even distribution of the finishing material. The inventor believed that the heat "oxidize[d] linseed oil".[9] The effect of heat on the drying of finishes has been scientifically studied. In 1919 Wolff investigated the influence of different wave lengths on the drying of varnishes and concluded that light of short-wave lengths induced a rapid oxidation on the surface and also polymerization in the inner layers.[10] Morton also pointed out that heat will aid polymerization.[11]

It is to be noted that the '161 patent, while in the description speaking of the use of infra-red lights as a source of heat, says specifically that "Other means for heating the flooring than by infra-red lamps could be used, but infra-red lamps have been found satisfactory in use." We think that the part of Bruce's argument in this Court which endeavors to point out to us the difference between "penetrating" and "convection" type of heat[12] loses much of its force when this quoted phrase is kept in mind. It is only in Claim 2 that the '161 application claims the method of doing what is described in Claim 1 by radiation which is infra-red in wave length.

Suppose, however, that we treat the patentee as claiming a process in which infra-red globes, or other infra-red instrumentalities, are used as a source of the heat to be applied to the wood. The District Judge said: "The substitution of infra-red for forced drying did not amount to invention." We think that a sound fact conclusion. Bruce asserts that only '161 teaches

---

[4] Textile Machine Works v. Hirsch, 1938, 302 U.S. 490, 58 S.Ct. 291, 82 L.Ed. 382; E. J. Brooks Co. v. Klein, 3 Cir., 1940, 114 F.2d 955.

[5] Lyons Patent No. 2,066,296.

[6] See patent involved in this litigation Partee-Gray No. 2,341,161, col. 2, par. 9, line 30.

[7] Dittmar Patent No. 1,510,465.

[8] Fahrenheit. Bruce claimed that the temperature it used was 360°. The patent's specifications, however, mention an oven temperature of "about 210 degrees F." and the "wood as it leaves the oven is about 172 degrees F."

[9] Edgecumbe Patent No. 1,860,664.

[10] For a report of this and other experiments in the use of ultraviolet rays to aid in the drying of varnishes, see Ellis & Wells, The Chemical Action of Ultraviolet Rays (1925) pp. 319–320.

[11] Morton, Radiation In Chemistry (1928), p. 255; Glasstone, Elements of Physical Chemistry (1940), p. 234. The books referred to in this note and in note 10 above were not in evidence nor referred to in the briefs of counsel. We use the references only to show the general discussion of the subject in technical writing, not for proof of any specific fact involved in this case.

[12] On which there was no evidence in the trial court.

that radiant penetrating heat of sufficient intensity will complete the final set of an oleoresinous finish in a short time.[13] The use of infra-red rays and the effects of its penetration, however, were known a number of years prior to the application for this patent. Groven suggested its utility in his paint drying process useful in connection with the painting of automobiles.[14] Quinn teaches the use of infra-red rays to dry and partly polymerize a resin ingredient applied to fibre wood.[15] This forced drying process had previously been used in other industries which were confronted with the identical problem of the space required for racking and air drying.[16]

■ We do not find anything in the precepts of the patent which teach that the application and polishing of the material while warm constitutes invention. There was testimony by White's experts that there was no difference which could be detected between flooring finished either hot or cold. This testimony was evidently accepted by the Trial Judge and he was the one to determine the weight to be given it. Furthermore, we have, again in the prior art, instances of both applying finish to surface and rubbing it following the application while the material was warmed or heated.[17] So here, too, there is no element of invention.

■ The Court has had, during the argument, a considerable amount of discussion from both sides as to whether the finish applied to the wood was oxidized or polymerized, or both, through this infrared heating process in the method described in '161. We are not holding the patentee to the correctness of his scientific explanation of the result achieved. He is not bound by his theory. Bruce is not bound here to demonstrate that finishing material applied to the surface of the wood is completely oxidized or polymerized, or both, on its journey from one end of the conveyor belt to the other. It is enough for him to show the procedure whereby unfinished wood at the initiation of the journey comes out, at the end of the journey, finished and fit to handle and to use.[18] The molecular changes which take place while the material is on its way are scientifically interesting, but are unimportant patentwise. We think that Bruce has shown a workable process. Nevertheless, the evidence shows substantial support for the conclusion of the Trial Judge that the process did not involve invention because it simply applied what was already known in the art.[19]

Affirmed.

---

[13] The drying quality of a varnish is very largely a function of the drying quality of the vehicle, i.e., linseed oil. Stillman, Engineering Chemistry (6th Ed. 1928).

[14] Groven No. 1,993,615.

[15] Quinn No. 2,321,937.

[16] See Brown & Ickes, Radiant Energy Drying, Electrified Industry, December, 1928, p. 20; Bennett & Haynes, Paint Baking with Near Infra-Red, Chemical & Metallurgical Engineering, February, 1940, pp. 106–108; Minutes of the Great Lakes Power Club, May 19, 1939, Palmer House, Chicago, Ill.

[17] Derr, Study In Present-Day Wood Finishing, presented at the Sixth Annual Wood Industries Meeting, Winston Salem, N. C., Oct. 15–16, 1931, of the American Society of Mechanical Engineers.

[18] Eames v. Andrews, 1887, 122 U.S. 40, 7 S.Ct. 1073, 30 L.Ed. 1064; Radiator Specialty Co. v. Buhot, 3 Cir., 1930, 39 F. 2d 373.

[19] Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58.