**TIMKEN–DETROIT AXLE CO. v. ALMA MOTOR CO.**

No .8300.

Circuit Court of Appeals, Third Circuit.

Reargued Feb. 20, 1947.

Decided Aug. 14, 1947.

Wilber Owen and Allen Owen, both of Toledo, Ohio, Hugh M. Morris and Alexander L. Nichols, both of Wilmington, Del., (I. Joseph Farley and Thomas J. Hughes, both of Detroit, Mich., on the brief), for appellant.

Wm. A. Strauch, of Washington, D. C. (J. Matthews Neale and Strauch & Hoffman, all of Washington, D. C., and Clarence A. Southerland and Southerland, Berl & Potter, all of Wilmington, Del., on the brief), for plaintiff-appellee.

Francis M. Shea, Asst. Atty. Gen., Gerald Gleeson, U. S. Atty., of Philadelphia, Pa., Lester P. Schoene and David L. Kreeger, Sp. Assts. to Atty. Gen., and Jerome H. Simonds, Atty., Department of Justice, all of Washington, D. C., on the brief, for intervenor.

Before MARIS, GOODRICH and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

The plaintiff (herein referred to as Timken) brought a declaratory judgment suit against defendant (herein referred to as Alma) in the District Court. Timken sought a declaration that certain transfer cases manufactured by it did not come within the terms of the non-exclusive license Alma had granted. It also sought a declaration that the Ruggles-Smith patent 2,173,044 was invalid in view of the prior art which existed at the time of the application for the patent. The learned District Judge made detailed findings of fact and conclusions of law and, in a thoroughly considered opinion, discussed the important

points involved.[1] He held that although plaintiff, as the licensee, was estopped to attack the validity of the patent, the Timken transfer cases T-79, T-79-1, and T-79-4, were not covered by claims 6, 8, and 11 of the Ruggles-Smith patent when those claims were read as limited by the prior art, with special reference to T-9, a transfer case developed by the United States Army, and Reif patent 1,296,216. The court concluded that when so limited there was no novelty in those claims unless such novelty was confined to the particular arrangement disclosed by the specifications. The arrangement of the mechanism in the T-79 series differs from that found in the Ruggles-Smith patent. The court held, therefore, that no royalties were due on the manufacture of the T-79 series. Alma appeals.[2]

The litigation in the District Court had to do with numerous devices, all of the same general sort. As to certain of them, there was a finding that Timken should have paid Alma royalties in accordance with the license agreement. Paragraph five of the judgment reads:

"The remaining auxiliary transmission mechanisms manufactured and sold by plaintiff since the issuance of the Ruggles and Smith patent either are not dominated by any claim of such Ruggles and Smith patent or no claim of royalty thereon has been made by defendant in this suit."

The appeal in this Court is by Alma only; there is no cross-appeal by Timken. And Alma's appeal is limited to the above quoted paragraph of the judgment.

The issue here presented is two-fold. First, to what extent is the licensee of a patent permitted to show the prior art when attempting to resist payment of royalties or a claim of infringement? This is a question of law.

Timken invites us to consider the validity of the Ruggles-Smith patent, despite the finding by the District Court that Timken is estopped from questioning its validity, a finding not appealed from. The basis for this invitation is that if the trial judge reached a result which can be supported on any theory, we are entitled to consider all possible bases in the search to find the supporting one. The validity question, thus being denied entrance at the front door, comes in at the back. To this invitation we send regrets. The estoppel point was squarely ruled upon in an unequivocal finding incorporated into the judgment. Timken could have appealed from it, but chose not to do so. It is too late now to urge the point which it could have had as a basis of appeal.

The District Court relied upon the rule stated in Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 1924, 266 U.S. 342, 351, 45 S.Ct. 117, 120, 69 L.Ed. 316, that "* * * the state of the art cannot be used to destroy the patent and defeat the grant, because the assignor is estopped to do this. But the state of the art may be used to construe and narrow the claims of the patent, conceding their validity." For a recent application, see Freeman v. Altvater, 8 Cir., 1942, 129 F.2d 494. But cf. Auto-

---

[1] Timken-Detroit Axle Co. v. Alma Motor Co., D.C.Del.1942, 47 F.Supp. 582.

[2] The appeal was taken to this Court on February 27, 1943. On July 28, 1943 the United States War Department issued Royalty Adjustment Order No. W-3 pursuant to the Royalty Adjustment Act of October 31, 1942, 56 Stat. 1013, 35 U. S.C.A. §§ 89–96. The Order directed Timken to pay no more royalties whatever to Alma under the license agreement for transfer cases manufactured for the United States. Timken petitioned this Court to dismiss the appeal on the ground that there was no longer a justiciable controversy. Alma responded by declaring that the Royalty Adjustment Act was unconstitutional. The Attorney General was notified that the constitutionality of the Act had been questioned and the United States thereupon filed a petition of intervention pursuant to the Act of August 24, 1937, 50 Stat. 751, 28 U.S.C.A. § 401. We proceeded to uphold the constitutionality of the Act and remanded the case to the District Court to dismiss on the ground urged by Timken and the United States. Timken-Detroit Axle Co. v. Alma Motor Co., 3 Cir., 1944, 144 F.2d 714. Alma appealed. The Supreme Court vacated our judgment and remanded the case to this Court to ascertain if the transfer cases were covered by the license agreement. This procedure was stated to be in accordance with the policy to avoid deciding a constitutional question if a case can be disposed of on any other ground. Alma Motor Co. v. Timken-Detroit Axle Co., 1946, 329 U.S. 129, 67 S.Ct. 231.

matic Paper Machinery Co., Inc., v. Marcalus Mfg. Co., Inc., 3 Cir., 1945, 147 F.2d 608, affirmed sub nom. Scott Paper Co. v. Marcalus Mfg. Co., 1945, 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47.

We pass, then, to the question of whether the state of the prior art so limited the claims that the only novelty of Alma's claims was the particular arrangement of the gears. It was so found below. Alma argues that this finding is not one of fact within the purview of Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. We disagree. We see nothing to distinguish the nature of this finding from the finding of invention[3] or anticipation[4] which have repeatedly been held to be within the scope of Rule 52. We think, therefore, that such a finding is one of fact and to be given the effect provided for in Rule 52.

The discussion so far disposes of what law there is in the case. The remainder is fact, and has to do with whether the conclusion of the District Court was clearly erroneous. The apparatus concerned must, obviously, be discussed briefly.

The Ruggles-Smith patent covers a device called a transfer case which is an auxiliary transmission designed to permit the drive from the engine of an automobile to be operatively extended to both the front and rear driving axles of a vehicle when such four wheel drive is desired. The court found that the Ruggles-Smith apparatus date of conception was prior to October 27, 1933. It also found that the T-9 apparatus and the Reif patent, which admittedly were conceived at a much earlier date, anticipated the principle embodied in the Ruggles-Smith patent and, therefore, under the rule announced, the only novelty was the particular arrangement of the gears. Alma claims royalties with regard to a transfer case, or series thereof, known as T-79, under the license of the Ruggles-Smith patent. But the gear arrangement in the T-79 is not an exact copy of the Ruggles-Smith patent. Therefore, we must proceed to a comparison of the mechanism employed in these various transfer cases.

In the Ruggles-Smith apparatus the power developed in the motor is taken from the transmission case by means of an input shaft on the end of which is connected a slidable gear. The input shaft is in the same plane and axially aligned with the primary output shaft. On this shaft is fastened a fixed gear with external and internal teeth. Below, but parallel to these shafts, is a countershaft on each end of which is fastened a fixed gear. Beneath this shaft, but parallel to all three of the above mentioned shafts, is the secondary output shaft. On one end of this secondary output shaft there is a dog clutch arrangement which permits the operative disconnection of the front end of the secondary output shaft when power to the front wheel is not desired. This same shaft has attached to its rear end, beyond the dog clutch gear arrangement, another fixed gear which is in constant mesh with the gear located on the far end of the countershaft. The gear on the rear end of the countershaft, in turn, is in constant mesh with the gear located on the rear end of the primary output shaft.[5] It follows, therefore, that whenever the gear located on the rear end of

[3] See the authorities cited in our most recent pronouncement on the subject, White v. E. L. Bruce Co., 3 Cir., 1947, 162 F.2d 304.

[4] Sturtevant Co. v. Massachusetts Hair & Felt Co., 1 Cir., 1941, 122 F.2d 900.

[5] A more technical description of the gear arrangement is found in the disputed claims which are herewith set out:

"6. In a power transmitting mechanism, a gear casing, a power input shaft journaled in said casing and projecting away from one face thereof, a primary power output shaft journaled in said casing and axially aligned with said power input shaft, said primary power output shaft projecting beyond the opposite face of said casing and adapted to have power taken therefrom, a secondary power output shaft journaled in said casing and disposed parallel to said first named shafts, said secondary power output shaft projecting beyond a face of said casing and adapted to have power taken therefrom, and power transmitting means disposed in said casing, comprising a countershaft disposed parallel to, and in the plane of said power input and output shafts, and gears for simultaneously transmitting power from said input shaft to said primary and secondary power output shafts, said power transmitting means being selectively operable to disconnect said

the countershaft is revolving the gears which are on the rear end of the primary and secondary output shafts will also revolve, thus driving the two power output shafts at the same time.

Alma claims that the outstanding and distinguishing feature of its gear arrangement which makes it differ from the prior art is that the low gear arrangement gives what Alma chooses to call "simultaneous transmission of power." The claimed novelty is this. When the slidable gear mounted on the input shaft is in mesh with the gear on the front end of the countershaft the flow of the power is from the slidable gear to the gear on the front end of the countershaft, through the countershaft to the gear on the rear end thereof and, since this gear, as pointed out above, is in constant mesh with the rear gears located on the primary and secondary output shafts, these two gears are driven simultaneously. One of the principal advantages of this arrangement is said to be that the force of the two revolving gears, which are meshed with the rear gear of the countershaft, is opposite and equal. Therefore, the stress and strain on the countershaft is reduced to a minimum. Alma also correctly points out that in the Ruggles-Smith patent the gears are in constant mesh whereas in the T-9 the gear on the countershaft must be shifted into position and this meshing may not be perfect. But in the Reif patent the gear on the countershaft that imparts power to the primary and secondary output shafts is in constant mesh with one gear on each of these shafts. Hence we think that the improvement of constant meshing may be one that any person skilled in the art could perceive; therefore, we cannot disturb the finding that this feature was anticipated.

A brief description of the T-9, we think, shows sufficient similarity to prevent us from holding that the Trial Judge was in error in concluding that the Ruggles-Smith claims were anticipated by the T-9 transfer case. We think it unnecessary to describe the exact arrangement of the gears in the T-9. It is sufficient to point out the course of the power and the position of the gears when the gear mechanism is in "high" gear position. As in the Ruggles-Smith patent, the power is taken from the transmission into the transfer case by the input shaft on which is connected a gear. In the T-9 the gear is a fixed gear; in the Ruggles-Smith patent it is a slidable gear, but the function which the gear performs when the Ruggles-Smith apparatus is in low is the same as that performed by the fixed gear when the T-9 is in "high". The input shaft is connected with the primary output shaft on which is placed a slidable gear and farther to the rear is a fixed gear. This rear gear, when the T-9 is in "high", is in mesh with the slidable gear located on the countershaft. The rear gear on the countershaft is also in mesh, under the same circumstances, with the gear which is located on the rear end of the secondary output shaft.

In the T-9 when the mechanism is in "high" the slidable gear from the primary output shaft is in clutch with the dog teeth of the fixed gear located on the input shaft. This fixed gear is also in constant mesh with the gear located on the front end of the countershaft and thus drives the countershaft which, in turn, drives the gear located on the rear end of the countershaft.

Alma claims that the Ruggles-Smith patent gives "simultaneous", as distinguished from "successive", applications of power

---

power input shaft from said power output shafts."

"8. In a power transmitting mechanism, the combination set forth in claim 6, wherein the gears on said output shafts are of the same size."

"11. In a power transmitting mechanism, a gear casing, a power input shaft, a primary power output shaft axially aligned therewith, a secondary power output shaft and a countershaft arranged between said

power input shaft and said secondary power output shaft, bearings for mounting said shafts, bearing means for rotatably mounting said input shaft within an end of said primary power output shaft, gearing associated with said shafts for transmitting power from said input shaft to said output shafts, and clutch means operable to connect and disconnect said input shaft from said output shafts."

194

to driving wheels, thus providing more power and with less strain on the mechanism. The argument and its attempted demonstration by diagrams of water conduits was both interesting and ingenious. We are not convinced by it. But if there is anything to the simultaneous argument, we think it is anticipated by the T-9 device when that device is in high gear. We think that the refusal by the District Judge to draw a distinction between high gear operation and low gear operation in this respect is not one which was clearly erroneous.

So we think the District Court had adequate support for the conclusion that, in view of prior art, the only novelty in Ruggles-Smith was the arrangement of gears. The T-79 series cases do not follow the Ruggles-Smith gear arrangement; Alma says they would be better cases if they did. It follows that the judgment appealed from should be affirmed.

We stay away from all questions concerning the Royalty Adjustment Act, though again tempted by Timken to enter that interesting field. We are deciding on the technical patent question only, in accordance with the directions given us on remand by the Supreme Court.

Affirmed.