**Hillis O. FOLKINS, Elmer Miller and Food Machinery and Chemical Corporation, Plaintiffs,**

v.

**Robert C. WATSON, Commissioner of Patents, Defendant.**

**Civ. A. No. 2850-52.**

United States District Court, District of Columbia.

May 20, 1954.

Rehearing Denied Nov. 4, 1954.

Judgment Affirmed May 26, 1955.

Edward H. Lang, Chicago, Ill., for plaintiffs. Bernard F. Garvey, Washington, D. C., of counsel.

E. L. Reynolds, Washington, D. C., for defendant.

McGUIRE, District Judge.

This is a civil action under R.S. § 4915[1] seeking the issuance of a patent. The application for patent of Folkins and Miller, entitled "Process for the Manufacture of Carbon Disulfide" was rejected by a 2–1 vote of the Board of Appeals of the Patent Office.

The process involved, as indicated, is one for making carbon disulfide from natural gas. A prior patent, No. 2,330,-934, had been issued to one Thacker for the production of carbon disulfide from hydrocarbons, and is relied upon by the Patent Office in this litigation. However, since Thacker had used methane, the hydrocarbon with the lowest molecular weight, as his starting material, he did not encounter the difficulties which ensued when Folkins and Miller attempted to operate the Thacker process with natural gas as the charging stock.

Now natural gas is a mixture of lower boiling and lower molecular weight hydrocarbons of the type intended by Thacker to be used in his process. The mixture is usually made up of 85–90% methane, 5–10% ethane, and the remainder of the higher molecular weight hydrocarbons such as propane, butane, pentane, and hexane. There certainly is no invention involved in the use of natural gas by the applicants, since such use was

1. As amended, 35 U.S.C. § 63 (1946). This section was repealed by Sec. 5, Act of July 19, 1952, c. 950, 66 Stat. 815, and is now replaced by 66 Stat. 803, 35 U.S.C. § 145 (1952).

indicated by Thacker. The invention, if any, lies in the discovery by the plaintiffs of the cause of the difficulties encountered when natural gas and not merely methane alone was used in the Thacker process, and its' obviation. These difficulties consisted of the plugging of the process lines with coke and tarry materials. After some experimentation with the sulphur and the catalyst used, it was decided to *prepare* the natural gas before charging it in. As a consequence, an absorption and stripping system was installed and the amounts of propane and the heavier hydrocarbons were reduced before charging in the natural gas. The result was the Thacker process became commercially successful and the occurrence of tars was eliminated.

No invention is claimed for the absorber-stripper system since the prior art taught the elimination of the higher hydrocarbons from natural gas. The plaintiffs base their claim on the discovery of the *source* of trouble.

They rely heavily on Gasoline Products Co. v. Coe [2] in which the invention involved the discovery of the cause of the corrosion that was taking place in the coils of an apparatus used for the cracking of petroleum oils. The apparatus, however, had been in use for a period of *seven* years, and in that time no one had been able to discover the cause of the difficulty. Here the Thacker process was in operation only three months before the source of the trouble was located. There had been no history of unsuccessful attempts to solve the problem extending over a long period of time as in Gasoline Products, *supra*. In other cases relied upon by the plaintiff [3] the need for improvement had long existed, competent investigators had failed to fill it, and the difficulty was discovered only after repeated experiments and failures, with none of which circumstances are we presently confronted.

■■ Not all improvements amount to invention. There must be some exercise of the inventive faculties and more than the mere exercise of mechanical skill.[4] In Safety Car Heating & Lighting Co. v. General Electric Co.,[5] Judge Learned Hand enumerated the factors to be considered in appraising an inventor's contribution to the art. They are "the length of time the art, though needing the invention, went without it: the number of those who sought to meet the need and the period over which their efforts were spread".

Those skilled in the art, it seems to me, would know that the higher hydrocarbons are more reactive than the lower. The discovery that these higher hydrocarbons were taking part in side reactions to form the coke and tar products did not involve the inventive faculty. The language of the court in Bostitch, Inc., v. Precision Staple Corp.[6] it seems is particularly applicable here:

"But his improvement came so shortly after [Thacker's] patent that, despite its commercial success, we are not convinced that more was required than the skill of the craftsman and that the exacting standard of 'invention' which the Supreme Court's decisions demand was satisfied."

Similarly, we find in Universal Oil Products Co. v. Globe Oil & Refining Co.[7] the Court finding that the conception was "on its face too obvious to constitute patentable invention, and * * * was advanced shortly after any need of it arose."

2. 1936, 66 App.D.C. 333, 87 F.2d 550.

3. United Chromium, Inc., v. International Silver Co., D.C.Conn.1931, 53 F.2d 390; Miehle Printing Press & Mfg. Co. v. Whitlock Printing Press & Mfg. Co., 2 Cir., 1915, 223 F. 647.

4. Walker, Patents (Deller, 1937), Sec. 24 and Sec. 17; Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58.

5. 2 Cir., 1946, 155 F.2d 937, 939.

6. 2 Cir., 1949, 178 F.2d 332, 336.

7. 1944, 322 U.S. 471, at page 487, 64 S.Ct. 1110, at page 1117, 88 L.Ed. 1399.

■■ The question before the court is not whether or not the plaintiffs' application is patentable but whether or not the Board of Appeals was clearly wrong in denying a patent.[8] I do not find so. Counsel will prepare tentative findings of fact and conclusions of law and proper order.

### On Motion for Rehearing

McGUIRE, District Judge.

Motion for rehearing denied.

The movants claim that the Court misapprehended the point at issue in that the alleged invention was not in discovering the source of the trouble but that it consisted of "tracking down the source of the trouble and then *solving* the problem in a *simple and economical way*." [Emphasis supplied.]

The Court in its memorandum of May 20, 1954 asserted substantially this: "The invention, if any, lies in the discovery by the plaintiffs of the cause of the difficulties encountered * * * and *its obviation*." [Emphasis supplied.] If this is not what is claimed, then Claim 9 is not definitive of the alleged invention, for that refers to a method of conversion relative to the conversion of natural gas, etc. by *reaction with sulphur in* the presence of catalysts, the improvement consisting of the reduction of the higher molecular weight hydrocarbon content to such an extent that in its reaction with sulphur in the presence of the catalyst the result is "to substantially completely eliminate the formation of tarry materials in the catalyst and resulting fouling thereof." This, it seems, is specific and the Court assumed it defined the claimed invention.

■ In this case there were no such difficulties which could not be overcome by those skilled in the art. That they were does not raise mere technical skill or novelty of approach to the dignity of invention; commercial success alone is not determinative—it is merely evidential. It cannot fill the basic gap. Textile Machine Works v. Louis Hirsch Textile Machines, 302 U.S. 490, 498–499, 58 S. Ct. 291, 82 L.Ed. 382.

■■ With reference to the function of the Court in an R.S. § 4915 proceeding, let it simply be reiterated that "The question for us is not whether in our opinion there was invention, but whether the finding that there was none is consistent with the evidence. 'The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body. * * *' 'Under the rule settled in this jurisdiction, while we are not absolutely bound by a chancellor's findings of fact, we do not disturb them * * * unless upon an examination of the evidence they are clearly wrong.'" Abbott v. Coe, 71 App.D.C. 195, 109 F.2d 449, 451–452.

■ The proceeding *was* a proceeding *de novo* and was not merely a review of the Patent Office proceedings.

The basic underlying fundamental and controlling reason for the Court's action, apart from others of a tangential character, is that what was done does not rise, as has been said above, to the dignity of invention.

Further, by way of corollary, the Court adopts for elaboration *in extenso* the memorandum filed by the Commissioner of Patents in opposition to the motion for rehearing.

Order accordingly and the cause will proceed to judgment.

---

8. Morgan v. Daniels, 1894, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657; Abbott v. Coe, 1939, 71 App.D.C. 195, 109 F.2d 449.